196 So.2d 539 (1967)
JIM WALTER CORPORATION, Plaintiff-Appellant,
v.
Jimmy LAPEROUSE, Defendant-Appellee.
No. 1882.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1967.
Rehearing Denied March 21, 1967.
*541 Walton J. Barnes, Baton Rouge, and Marion W. Groner, New Iberia, for plaintiff-appellant.
Armentor & Resweber, by A. J. Resweber, Provost & Ernest, by C. Arthur Provost, New Iberia, Earl H. Willis, St. Martinville, for defendant-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
FRUGÉ, Judge.
James Laperouse, the owner of five lots in Fontelieu Addition in the City of New Iberia, contracted with the plaintiff, Jim Walter Corporation, to have constructed upon the five lots five houses known within the building trade as "shell homes". Pursuant to the negotiations between plaintiff and Mr. Laperouse, written contracts for the construction of the houses were signed and recorded. The price specified in the contracts was $3,050.00 cash upon completion of the work on each house. Each house was to be constructed according to plans and specifications attached to each contract; however, no plans were ever attached by either the owner or the builder.
Some months prior to the confection of the above contracts, the defendant's father, Expadie Laperouse, obtained a first mortgage in the amount of $30,000.00 upon the five lots in question. In order to finance construction of the five houses, the younger Laperouse went to New Iberia National Bank and gave as security a mortgage upon the five lots. To further secure the transaction, the elder Laperouse's mortgage was subordinated to the Bank's mortgage and he endorsed, as an accommodation endorser, the promissory note representing the construction loan to the younger Laperouse. Before the approval of the construction contracts at issue, and as required by Jim Walter Corporation, the bank gave a letter of commitment addressed to Jim Walter Corporation, notifying it that the bank was prepared to advance funds for the construction of the houses as specified by the contracts.
Construction began on all five houses at once and in due course the bank paid, by cashier's checks issued to Jim Walter Corporation, $6,100.00 for the completion of two of the houses. Throughout the progress of construction, however, the younger Laperouse expressed dissatisfaction with the materials and the methods of construction, and after the two houses had been paid for as outlined above, he instructed the bank to withhold further payments from the plaintiff corporation.
The corporation brought suit in the district court alleging that it had complied fully with the terms of the contract between it and Jimmy Laperouse, and praying for a judgment in the amount of $9,150.00, the contract price of the three remaining houses, plus $15.00 for the preparation and recordation of its lien on the properties. By supplemental and amended petition, plaintiff corporation brought in as additional defendants, Expadie Laperouse, the father of Jimmy Laperouse, and the New Iberia National Bank, alleging that the three defendants had fraudulently conspired to defeat the plaintiff-corporation's recovery of the price of construction of the houses. In the alternative, plaintiff-corporation prayed for recovery of the reasonable value of material and workmanship on the basis of quantum meruit. The trial judge dismissed the plaintiff's suit, holding that the corporation had not complied with its obligations under the contract, and from this adverse judgment the corporation has appealed to this court.
The first issue which we must decide is whether the plaintiff is entitled to recovery of the price specified in the contracts or, alternatively, of the value of the houses *542 under the theory of quantum meruit, for we need not discuss the potential liabilities of each defendant if the plaintiff is not entitled to recovery. In deciding this issue, it is necessary to determine whether, as the plaintiff contends, the parties contracted for the construction of five "shell homes," or whether, as contended by the younger Laperouse, the corporation was obligated to construct houses fully finished both inside and out. As mentioned above, though the contracts themselves stated that plans and specifications were to be attached thereto, the record reveals that this was never accomplished. Nor can comfort be found in the language of the construction contracts themselves, for they merely provide that "builder agrees to build a house according to the plans and specifications attached. * * *"
Jimmy Laperouse contends that the New Iberia agent of Jim Walter Corporation, L. J. Mire, Jr., contracted with him to construct fully finished houses on each lot and that the cost of each house would be an even $5,000.00. In this regard, we note that the letter of commitment from the Bank to the corporation supports the view of the defendant Laperouse, because it states that the bank has made a commitment to finance the houses to be constructed upon the lots to the extent of $5,000.00 per unit. On the other hand, the agent for the corporation, Mr. Mire, testified that the only obligation of Jim Walter Corporation was to furnish five shell houses and that completing the inside of the houses would be the responsibility of the owner (Laperouse), but that he arranged on behalf of Mr. Laperouse for the construction carpenters employed by Jim Walter to stay on and finish the inside of the houses. In this connection, we note that the record contains numerous cashier's check receipts showing that payments were made by the bank directly to the laborers and materialmen for work done in finishing the inside of the houses. In some cases Jimmy Laperouse was made the joint payee together with the individual laborer or materialman (Tr. 77).
Regarding the missing plans and specifications, we find in the record a roughly drawn set of plans which the testimony establishes were sketched by Mr. Laperouse and given by him to the plaintiff and to the carpenters on the job site. In the lower righthand corner of these plans there is a list of materials and specifications containing eighteen items, some of which are clearly intended for the job of finishing the inside of the houses. We do not feel that this is unusual, however, in view of the fact that the same carpenters who were to construct the outside shell of the houses were engaged to complete the insides as well.
In addition, we are most impressed by the fact that the written and recorded contracts between the younger Laperouse and Jim Walter Corporation called for the construction of five houses at a total cost to the owner (Laperouse) of $3,050.00 per unit. Having placed his signature upon each written contract providing for the construction of houses at that lesser price, this court looks with disfavor upon testimony adduced on Mr. Laperouse's behalf which purports to establish a greater obligation at a greater price. Louisiana Revised Civil Code art. 2276; Piliawsky v. Colar, 112 So.2d 730 (Orl.La.App.1959). It is our feeling, therefore, that the preponderance of the evidence establishes that the plaintiff, Jim Walter Corporation, was obliged by its contract with Mr. Laperouse to construct upon five lots in Fontelieu Subdivision five "shell houses" and that the obligation of finishing the inside of the houses rested elsewhere.
Having so decided, we now turn to the question of whether the plaintiff performed his obligations under the contract. The defects which are alleged to have occurred in the construction of the five houses are as follows: That the ceiling height in one of the houses is seven feet four inches instead of eight feet as agreed upon by the parties; that two of the houses contained twenty square feet less than the total specified *543 by the contracts; that the paint used on one or more of the houses was thinned with gasoline instead of the proper thinner, resulting in an inferior paint job.
When the building materials for the five houses were delivered to the jobsite in New Iberia, they were prefabricated with a ceiling height of seven feet four inches. While inspecting the house most advanced in construction, Mr. Laperouse discovered the alleged defect and called it to the attention of Mr. Mire, the agent of the plaintiff. Since it was too late to change the ceiling height in that one house without tearing down what had been built, the plaintiff corporation supplied new prefabricated materials with an eight foot ceiling height on the other four houses and completed the first house with a ceiling height of seven feet four inches. When questioned about this modification, the area manager of Jim Walter Corporation testified that all the shell houses which Jim Walter constructs have as a standard feature a ceiling height of seven feet four inches. He further testified that during the negotiations for the contracts at issue, the defendant had examined several sample shell houses with that identical ceiling height. Reference to the floor plan supplied by Mr. Laperouse shows that no dimension for ceiling height is indicated. When queried about this, Mr. Laperouse admitted that his failure to include this vital dimension was "a mistake" on his part. From the evidence presented by this record, therefore, we are not prepared to say that an eight inch deviation from an eight foot ceiling height in one of the five houses is a material and substantial defect in construction which may be directly attributable to the fault of the builder.
The same is true of defendant's other allegations of construction defects in the five houses. There is no direct proof that two of the houses contain a twenty square foot deviation from the specifications, nor is there any testimony which unquestionably indicates that gasoline was used as a paint thinner on some of the houses. The only evidence in this regard is Mr. Laperouse's testimony that while inspecting the jobsite one day he noticed that the newly applied paint was lumpy and, upon inquiry, was informed by one of the workmen that gasoline had been used in thinning the paint. Similarly, there is no testimony as to the actual dimensions of the houses or the computed square footage, only an unsupported charge of Mr. Laperouse that two of the houses deficient in this respect. Assuming for purposes of discussion that some defects directly attributable to the builder are proven by the record, the legal principle to be applied in determining contractual liability of the parties is found in Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880, 882 (1961):
"The contract involved in the instant case is a building contract within the definition of Article 2756 of the LSA-Civil Code. Article 2769 is therefore controlling. Under this codal provision the law is well settled that when the contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach.
"Substantial performance of the contract is essential to warrant the application of this rule of law. For if the breached contract has not been substantially performed, the contractor may not recover on the contract, but is limited to recovery on quantum meruit.
"The principal question presented in this case is whether or not there has been substantial performance so as to permit recovery on the contract. This is a question of fact. Among the factors to be considered are the extent of the defect or nonperformance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use or benefit to the defendant of the work performed."
*544 See also Rocquin v. Simmons, 187 So.2d 472 (La.App. 4th Cir. 1966); Dugue v. Levy, 114 La. 21, 37 So. 995 (1904); Merrill v. Harang, 198 So. 386 (La.App. 1st Cir. 1940); Norman v. Brown, 83 So.2d 488 (La.App. 2nd Cir. 1955); Jones v. Tusa, 100 So.2d 799 (La.App.Orl.1958); Snow-White Roofs, Inv. v. Boucher, 182 So.2d 846 (La.App. 4th Cir. 1966); Federico v. Kratzberg, 163 So.2d 843 (La.App. 4th Cir. 1964); Loeb v. Neilson, 128 So.2d 447 (La.App. 4th Cir. 1961).
We note with interest that four of the five houses alleged to be defective have been, after some additions and improvements by the defendants, moved from their present location in Fontelieu Subdivision and sold for a substantial price. It is our view, therefore, that even had the defendant sustained his burden of proof [see Justiss-Mears Oil Co. v. Pennington, 132 So.2d 700, (La.App. 1st Cir. 1961); U-Finish Homes, Inc. v. Michel, 183 So.2d 101, (La.App. 1st Cir. 1965)] the defects are not substantial enough when compared with the expanse of the total undertaking to justify withholding, without further proceedings, all or a portion of the contract price. Of course, under the above cited jurisprudence the owner is entitled to a reduction of the price to the extent of the proven defects or for damages in a later suit in an amount sufficient to repair the discrepancies. La.Rev. Civil Code arts. 2756, 2769; Papa v. Louisiana Metal Awning Co., 131 So.2d 114 (La.App. 2d Cir. 1961). We hold, therefore, that the plaintiff is entitled to the full contract price for the remaining three houses, subject of course to the defendant's right to restitution.
Having decided that the plaintiff may recover the contract price of the remaining three houses, we are now called upon to consider whether the two defendants who were joined by the plaintiff's amended petition should be held liable, together with the contracting party, Jimmy Laperouse.
Though the plaintiff charges that the three defendants entered into a conspiracy to defeat his recovery under the contract, the trial judge found, and we agree with his determination, that there was no evidence of fraud or misrepresentation and that the plaintiff's allegations in this regard were groundless and should be rejected.
In like manner do we reject the plaintiff's claim that Expadie Laperouse is the "undisclosed principal" and the prime mover of the entire transaction. It is true that Expadie Laperouse was an accommodation endorser on the notes of Jimmy Laperouse held by the bank and that, prior to the filing of the present suit, Expadie Laperouse paid off the notes, thus extinguishing the Bank's first mortgage, and then foreclosed on his own mortgage on the five lots, subsequently purchasing them at the sheriff's sale. But in so doing Expadie Laperouse was perfectly within his legal rights and followed a course of action which any prudent creditor in his position would endorse. We think that it is important to point out in this connection that the younger Laperouse had suffered financial reverses and that his father had advanced money toward the support of his family and that the mortgage which Mr. Laperouse held on the property was taken some two or three months before the contract between Jimmy Laperouse and Jim Walter Corporation was ever signed. For these reasons we feel that the plaintiff has in no way established Expadie Laperouse's responsibility for the contract executed between Jimmy Laperouse and Jim Walter Corporation.
The New Iberia National Bank, however, is in a different position. In order to guarantee the credit of the younger Laperouse, the bank issued to Jim Walter Corporation its letter of commitment which reads as follows:
"Jim Walter Corporation
P. O. Box 9128
Tampa, Florida
"Gentlemen:
"Referring to contract entered into by and between you and James J. *545 Laperouse for construction of five homes in Fontelieu Addition to be constructed upon the lots described as follows:
"Lot No. 5, Block 2 Fontelieu Addition
Lot No. 6, Block 2 Fontelieu Addition
Lot No. 7, Block 2 Fontelieu Addition
Lot No. 8, Block 2 Fontelieu Addition
Lot No. 9, Block 2 Fontelieu Addition
"We have made a commitment to Mr. Laperouse to finance the houses to be constructed upon these lots to the extent of $5,000.00 per unit. We have in our possession mortgage notes which have been recorded prior to any construction on said lots, and proceeds of these loans are to be used for payment of materials and buildings furnished on each respective lot.
 Very truly yours,
 /s/ Jack O. Broussard
 Assistant Cashier."
In reliance upoin this letter, Jim Walter Corporation constructed the houses at issue and, in our opinion, is entitled to look to the bank in addition to Jimmy Laperouse for the payment of the costs of construction. The letter of commitment was issued as a consequence of the loan transaction between Jimmy Laperouse and New Iberia National Bank. On this subject, Art. 1890 of the Louisiana Revised Civil Code provides:
"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
In this article is embodied the concept of the "stipulation pour autrui" and its validity and enforceability are clearly recognized by the legal history and jurisprudence of this state. See 2 Planiol, Civil Law Treatise (An English Translation by the Louisiana Law Institute), Chapter X, Nos. 1209-1267 (1959); Aubry & Rau, Droit Civil Francais (A Translation by the Louisiana Law Institute), Section 3436 (6th ed. 1965); Gateway Barge Line, Inc. v. Tyler, 175 So. 2d 867 (La.App. 1st Cir. 1965); Ordoneaux v. Koller, 166 So.2d 1 (La.App. 3d Cir. 1964); 39 Tul.L.Rev. 427, 432; 26 La. L.Rev. 494; for an extensive and scholarly treatment of the history and application of the stipulation pour autrui, see 11 Tul.L. Rev. 18, "Third Party Beneficiaries in Louisiana, the Stipulation Pour Autrui" by Professor J. Denson Smith.
On the whole, we believe that the letter of commitment issued by the bank directly to Jim Walter Corporation contains a classic example of a stipulation pour autrui. In reaching this result, we are mindful of the cases cited by counsel for the Bank, which hold that laborers and materialmen who are not specifically named in a contractor's performance bond are not the beneficiaries of such a stipulation. However, we feel these cases are inapposite to the facts at bar in light of the fact that the Bank's letter was addressed specifically to the plaintiff and in no uncertain terms provided that the proceeds of the loan transaction between it and the defendant, Laperouse, would be used to finance the cost of construction of the houses. In approving that contract of construction and actually constructing the houses, the plaintiff accepted the benefit of the stipulation made in its favor and is thus entitled to a direct action for payment against the bank.[1] La. Rev. Civil Code art. 1902; Krause & Managan, *546 Inc. v. Tracy, 155 So. 283 (La.App. 1st Cir. 1934).
In its answer to this appeal, the New Iberia National Bank asks this court to reserve its rights to sue Jim Walter Corporation for damages allegedly caused by the plaintiff's allegations of fraud and conspiracy between the several defendants contained in the plaintiff's amended and supplemental petition. We therefore expressly reserve the Bank's rights in this regard and we also reserve any rights which the defendants might have in connection with a claim for reimbursement for the value of the alleged defects in the construction of the five houses.
For the foregoing reasons, the judgment of the district court dismissing plaintiff's suit is reversed and judgment is hereby rendered against the defendants, Jimmy Laperouse and the New Iberia National Bank, in the amount of $9,165.00, with interest from date of judicial demand until paid. The costs of trial and of this appeal are to be borne by these defendants.
Reversed and rendered.

On Application for Rehearing.
En Banc.
PER CURIAM.
One of the defendants in the instant case, namely New Iberia National Bank, complains that we were in error in allowing plaintiff the sum of $15 for preparing the lien and privilege filed by plaintiff herein.
On examination of the statute on the subject, we are of the opinion that the position taken by plaintiff is correct. Only the costs of recording and not the costs of preparing the lien are allowable by statute. LSA-R.S. 9:4801; Edward Chassaniol, Jr., Roofing & Sid., Inc. v. Ramsey, La.App., 4 Cir., 144 So.2d 618. Accordingly, our original decree is hereby amended so as to delete the award of $15 for preparing the lien and privilege filed by plaintiff.
As thereby amended, our original decree is reinstated. Plaintiff-appellant is reserved the right to apply for rehearing.
Original decree amended, and application for rehearing denied.
NOTES
[1] Though the Bank's mortgage, and therefore its loan security, has been effectively discharged by the elder Laperouse's payment and subsequent seizure under his second mortgage, the record reveals that the Bank's interest is still adequately protected since it holds an unnegotiated cashier's check sufficient to cover the Bank's liabilities in this matter, which check was given the bank pending the outcome of this litigation.