292 So.2d 759 (1974)
E. Roland KEATING
v.
Alton J. MILLER.
No. 6146.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
*760 Daniel E. Becnel, Jr., Reserve, for defendant-appellant.
Alfred Abramson, LaPlace, for plaintiff-appellee.
Before GULOTTA, STOULIG and SCHOTT, JJ.
GULOTTA, Judge.
This is a suit by plaintiff contractor for the balance owed (less credits) on a building contract. The owner seeks, in reconvention, additional costs to complete the construction required because of plaintiff's alleged defective workmanship. From a judgment in favor of plaintiff, defendant appeals. In answer to the appeal, plaintiff seeks attorney fees and the assessment of costs and expert fees against defendant. We reverse and remand.
The facts are that the contractor gave a written estimate to defendant on January 8, 1972 for the construction of a residence consisting of 1,700 square feet for the price of $19,000. Charge orders brought the price to $19,300. A building contract was entered into on January 10. No square footage was mentioned in the contract; however, references were made to plans and specifications. Plans were not attached to the contract. Subsequent agreed upon plans specified 1,850 square feet.
The initial dispute arose when defendant discovered that the slab for his house was two feet shorter than specified in the plans. Construction work continued on the house but was subsequently terminated upon demand of owner when a substantial part of a veneer brick wall fell. Defendant wanted the brick work completely replaced while the plaintiff wanted to repair only those parts of the work which plaintiff claimed were defective. Herein lies the primary dispute. When agreement could not be reached on the extent of the brick replacement, defendant terminated the contract and completed the work. *761 Plaintiff then filed a lien, and this suit followed.[1]
Defendant, in seeking reversal, claims plaintiff breached the contract by constructing the house with less square footage than specified in the plans and by placing such defective masonry on the building as to require complete replacement. The owner urges further that the court erred in concluding that there was substantial performance by the contractor resulting in an award in plaintiff's favor based on this performance. Defendant lastly urges the trial judge erred in not permitting the use of depositions to impeach plaintiff's testimony.
Plaintiff, on the other hand, argues that there was an agreement for the construction of a house containing 1,700 square feet for the contract price of $19,000. While the plans call for a greater amount of square footage, according to plaintiff, there was never any agreement to construct a building containing in excess of 1,700 square feet for the agreed price. Nevertheless, plaintiff insists defendant received a house containing 1,780 square feet. Furthermore, plaintiff argues the plans cannot be controlling because extensive changes were made in variation from the plans. While acknowledging that part of the brick work was defective, plaintiff disputes the necessity for the entire replacement of the bricks. Plaintiff seeks attorney fees, costs and expert witness fees to which he claims he is entitled under the contract.
We are confronted with two questions primarily. The first is whether or not plaintiff has breached the contract by reducing the length of the building by two feet; and if so, has there been a waiver by the defendant. And, secondly, whether the masonry work was so defective as to necessitate its complete replacement justifying the termination of the contract by defendant.
The contract reads "see plans and specs" and did not specify the number of square feet. However, the plans call for 1,850 square feet, according to plaintiff. When plaintiff reduced the square footage from 1,850 square feet to 1,780 square feet by reducing the length of the slab by two feet without prior assent of the defendant, he breached the contract. It is clear, however, that defendant waived the breach by permitting plaintiff to continue construction after he became aware of the reduced footage. Under the circumstances, defendant cannot rely on the breach as justification for terminating the contract and completing the construction.
However, the defective brick work constituted justification for termination and completion by defendant under the terms of the contract.
Article 23 of the contract provides:
"The Contractor shall correct any Work that fails to conform to the requirements of the Contract Documents where such failure to conform appears during the progress of the Work, and shall remedy any defects due to faulty materials, equipment or workmanship which appear within a period of one year from the Date of Substantial Completion of the Contract or within such longer period of time as may be prescribed by law or by the terms of any applicable special guarantee required by the Contract Documents. The provisions of this Article 23 apply to Work done by Subcontractors as well as to Work done by direct employees of the Contractor."
Article 25 of the contract provides:
"If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents or fails to perform any provision of the Contract, the Owner may, after seven days' written notice to the Contractor and without *762 prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the Contractor or, at his option, may terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever method he may deem expedient, and if the unpaid balance of the Contract Sum exceeds the expense of finishing the Work, such excess shall be paid to the Contractor, but if such expense exceeds such unpaid balance, the Contractor shall pay the difference to the Owner."
It is clear that when these articles are read together, the owner may terminate the contract and complete the work if, after notice, the contractor fails to comply with the terms of the contract by correcting the deficiencies. The deficiency complained of was the defective brick job.
Plaintiff admitted the brick work was poor and needed partial replacement. He stated that the mortar joints were "really sloppy" and needed cleaning. He further testified the brick walls fell on two occasions. The first was when the brick work was being constructed and the second was after the completion of the brick job. In his testimony at trial, he stated vibration from nearby passing trains caused the bricks to fall. However, in his deposition,[2] plaintiff stated that lack of wall ties caused the brick to fall. Keating testified further that there were no wall ties in the section of brick wall that fell after the house was completed. However, he did state that he knew some wall ties were used in the brick work.
Larry Boudreaux, a bricklayer, examined the walls after completion but before the wall fell on the second occasion. He noticed "a couple of walls" were not plumb and had to be torn down. He further testified the brick work was "smeary". He did state, however, that in his opinion it was not necessary to replace the entire brick work. According to Boudreaux, because he examined the walls after completion, he could not ascertain if wall ties were used. He did state that a house without wall ties was not as stable as one constructed with wall ties.
Defendant Miller testified that there were a few wall ties on the wall that fell on the first occasion; however, there were no wall ties on that part of the wall that fell on the second occasion. Miller's complaints about the brick work were that the walls were leaning; walls fell on two occasions; there was a variance in the mortar joints from three fingers in width to the width of a match stick; and the corners of the brick work were uneven. Defendant stated that he would not accept the brick job and demanded it be replaced in its entirely because he could not trust the job.
Miller's actions under the circumstances, in our opinion, were reasonable and justifiable. His demand for replacement came after the wall had fallen on a second occasion and after the house had been reduced in length by two feet without his consent. Defendant's lack of trust in the brick work was warranted.
It is our conclusion, therefore, that plaintiff breached the contract by his failure to completely replace the brick work and Miller's action was warranted in invoking Article 25 of the contract when he terminated the contract and completed the construction.
The trial judge manifestly erred in concluding that the contract was substantially performed by plaintiff. According *763 to plaintiff's own admission, the house was three-fourths completed when the contract was terminated. Keating explained that the electrical work had not been completed; floors were not installed; heating, air conditioning, kitchen appliances and cabinets were not installed; additional carpentry and plumbing at a total cost of $1,150 was required to complete the job. Plaintiff indicated also a concrete driveway was to be laid.
It is well settled in our jurisprudence that the question of substantial performance of a building contract is a question of fact. Among factors to be considered are the extent of defect or nonperformance, degree to which the purpose of the contract is defeated, ease of correction and use or benefit to the owner of the work performed. Jim Walter Corporation v. Laperouse, 196 So.2d 539 (La.App. 3rd Cir. 1967); Airco Refrigeration Service Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961).
When we apply these standards to the instant case, we cannot say there was substanial performance. In such instances, plaintiff is not entitled to recovery under the contract but is limited to recovery in quantum meruit. Bayone v. Petteway, 180 So.2d 78 (La.App. 2nd Cir. 1965). See also Rogers v. Standard Plumbing and Heating Company, 176 So.2d 810 (La.App. 2nd Cir. 1965). Defendant, on the other hand, is entitled to be paid any costs incurred to complete the house in excess of the contract price as set forth in the contract. Gross v. Breaux, 144 So.2d 763 (La.App. 4th Cir. 1962). See also LSA-C.C. art. 2769.
Finally, we find no merit to plaintiff's claim that the contract provides for payment of attorney fees to the contractor if he is compelled to enforce payment under the contract. The contract provides:
"Owners will pay any and all attorneys fees incured (sic) in contract, and complete job."
We do not interpret this provision to confer the right to collect attorney fees as contended by plaintiff. A more reasonable interpretation, we think, is that defendant will pay attorney fees and costs that may be incurred in connection with the construction of the house.
Plaintiff clearly is not entitled to attorney fees under the contract, irrespective of the ultimate result in the litigation.
Accordingly, the judgment is reversed. The matter is remanded to the trial court for the introduction of evidence and for a determination of the extent of recovery to which plaintiff is entitled in quantum meruit and for the introduction of evidence and for a determination of the extent of the costs incurred by defendant, if any, to complete the house in excess of the contract price. Costs to await final disposition.
Reversed and remanded.
NOTES
[1] Article 15 of the contract related to arbitration; however, neither litigant resorted to its use.
[2] These depositions erroneously were not permitted to be introduced in evidence by the trial judge for the purpose of impeachment. See LSA-C.C.P. art. 1428(1). Counsel for defendant properly preferred the document.