UNITED STATES of America ex rel. Charles R. RILEY, Plaintiff-Appellee,

v.

The DIRAN COMPANY and Reliance Insurance Company, Defendants-Appellants.

No. 76–2897.

United States Court of Appeals, Fifth Circuit.

June 20, 1979.

Gerard M. Dillon, New Orleans, La., for defendants-appellants.

John M. Currier, New Orleans, La., for plaintiff-appellee.

Before RONEY, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Charles R. Riley brought this suit under the Miller Act, 40 U.S.C. §§ 270a–270d (1976), to recover the balance due on his contract with The Diran Company (Diran), the general contractor on a project to expand the United States Army Reserve Center at Hammond, Louisiana. The Reliance Insurance Company (Reliance), also named as a defendant, is the surety on Diran's payment bond. Diran appeals from a judgment awarding Riley damages and dismissing Diran's counterclaim. We affirm.

Diran subcontracted the masonry work on the construction project to Riley in August 1973. There were problems in their relationship from the very beginning. Riley contracted to do the job for $35,000 and to perform the work in accordance with the specifications in Diran's contract with the Army. Riley was to supply all labor and materials. Notwithstanding this provision, Diran, without consulting Riley, had already ordered the brick for the job before Riley began work, negotiated the price, and arranged to pay the supplier directly. The cost was deducted from the early progress payments due Riley, which made it difficult for him to meet his payroll.

Riley began work in late September 1973. He was to build brick walls with doorways through them. Diran was to install the metal doorframes before Riley began the walls, but the frames were not at the job site when Riley was ready to start. He was nevertheless ordered to begin laying the walls while awaiting the arrival of the frames. This entailed additional difficulty and expense for Riley in later completing the wall sections around the doors.

Diran was paid approximately every thirty days by the government as the work progressed. The subcontract provided that Riley was to be paid no later than 10 days after Diran received payment. Despite the fact that Diran was being paid for the masonry work even before Riley started work, Riley did not get his first payment until November 30, 1973. He was paid only once more, on December 14, 1973, for a total of $11,720.22.

The prime contract made Diran responsible for quality control of all work on the project. Diran's project manager, Johnny Hernandez, was the designated Quality Control Officer charged with ensuring that all work, including that of subcontractors, met the specifications in the contract. Hernandez supervised the work on a daily basis. He testified that he pointed out defects in Riley's work as they were discovered and repeatedly asked Riley to remove excess mortar and wash the brick so that the true condition of the work could be assessed. Riley procrastinated, however, and never washed the walls.

Diran gave Riley formal notice of default on January 22, 1974, and replaced him with another contractor on February 12, 1974. At that point the masonry work was 90% complete, although it was defective in certain respects, including: bricks were laid with the wrong face turned out, courses did not line up, control joints had been left out, and the walls had not been cleaned. The new contractor, who was hired on a cost plus basis, completed and corrected some of the work; it was finished by a third contractor brought in by Reliance after Diran was defaulted by the Army on the prime contract.

Riley sued for the $23,300 due on the contract plus interest. Diran counterclaimed for $23,000 as the cost of completing and correcting Riley's work and damages incurred because of delay caused by Riley. The district court found that under the applicable Louisiana law[1] Riley had substantially completed the contract and was due the full contract price with deductions for the payments received, the cost of the brick purchased by Diran for Riley's account, and the cost of completing the work and correcting certain of the defects. Deductions were disallowed for other defects because the court found that Diran had waived or was estopped from having Riley bear the cost of their repair. Diran's counterclaim was dismissed.

■ On this appeal, Diran first argues that no finding of waiver or estoppel is permissible on the record in this case. We disagree. Hernandez was Diran's project manager on the job and the person responsible for overseeing the quality of Riley's work. He testified that he made complaints to Riley almost daily about defects

1. Although this suit arises under the Miller Act, ordinary contract issues are governed by state law; inasmuch as a construction of the statute is not required here, no federal law questions are presented. *See United States ex rel. Aucoin Elec. Supply Co. v. Safeco Ins. Co. of America,* 555 F.2d 535, 541 (5th Cir. 1977).

in his work, but Hernandez made no mention of any defects in his daily Quality Control Reports to the government.[2] He also testified that he repeatedly asked that the walls be cleaned and that many defects were not discovered until after Riley was replaced. We think the court was fully justified, however, in finding that Hernandez did not object to many known defects in the work. When asked why he did not stop the work to correct known deficiencies, he answered:

> I could have stopped the work, sir, but I'm after a finished product. . . . Now, if he can run that brick and it's a satisfactory job, well, whatever method he used to wash it down, or, whatever method he used to correct it, if it's a satisfactory job, if it satisfies the Corps of Engineers or whatever, then, that's fine. But, after it's washed down and everything's exposed and it's not right, then the finished product is not any good.

> . . . . .

> Now, if he can get it up there where it's satisfactory to everybody, if he can sell the thing, that's fine. That's good. He has a set of plans and specifications just like I got. He's a mason contractor. He knows just exactly what he can sell and what he can't sell. I shouldn't have to point out everything to him and do his work for him.

First Supp. Record, vol. II, at 198–99. This testimony supports the court's conclusion that Diran, through Hernandez, intentionally permitted Riley to continue working despite the presence of known defects until it was too late to correct them without great cost. Hernandez took the attitude that if the Army accepted the work, that was fine; if the Army rejected it, that was Riley's problem. But Riley's contract was with Diran, not the Army, and having permitted

him to continue without correcting work it knew did not conform to the specifications, Diran may not now be heard to object. *See Keating v. Miller,* 292 So.2d 759 (La.Ct.App. 1974); *Elite Homes, Inc. v. Herrmann,* 242 So.2d 614 (La.Ct.App.1970), *cert. denied,* 257 La. 984, 244 So.2d 857 (1971).[3]

Diran's second argument is that the finding of substantial completion is demonstrably erroneous in view of the district court's computation of the cost of completion and repair at $10,600. This amounts to 30% of the total contract price. Diran contends that this compels the conclusion that the work was, in effect, only 70% finished, and this cannot be considered substantial completion under any circumstances. If Riley did not substantially perform, the argument continues, his only recovery is quantum meruit, but he offered no proof of the value of the work he completed and should recover nothing.

■ Diran concedes that the question whether Riley substantially performed is one of fact. The detailed reasons for judgment filed by the district court in this case disclose a careful consideration of this issue and a conscientious balancing of the factors required by Louisiana law to be weighed in making such a decision. The district court was very familiar with the applicable rules, *see C. H. Leavell & Co. v. Board of Commissioners,* 309 F.Supp. 626 (E.D.La.), *aff'd,* 424 F.2d 764 (5th Cir. 1970), and we think its findings in this case cannot be disturbed. There is no dispute that the masonry work was at least 90% complete when Riley was ordered off the job. To argue that it was only 70% complete because it cost Diran 30% of Riley's bid price to finish and correct deficiencies ignores the fact that Riley's actual costs to perform the work he accomplished were far greater than anticipated.

---

2. On February 6, 1974, just before Riley was replaced on the job, Hernandez noted that the gable ends on one wall were too low and that the masonry contractor did not correct them.

3. These cases are not distinguishable, as Diran urges, on the basis that they did not involve defective work. In *Keating,* a cement slab was laid two feet shorter than called for by the

plans. In *Elite Homes,* a slab was laid a foot lower than required by the contract. Thus, in both cases, known variances from the specifications were allowed to remain in the structures, and later complaints were held barred by the failure to object at the time. That is precisely the case here.

It is evident from the record that the job was underbid, and labor costs were further increased by Diran's insistence that he begin work before the door frames were installed. Thus, the comparison of the cost of completion and repair to the contract price is meaningless if it is recognized that Riley would have sustained a substantial loss on the contract even if he had been permitted to complete it.

Diran objects in passing to the court's failure to credit it for the overhead and profit of the contractor brought in to complete the work. Diran must bear this cost, however, since it prevented Riley from completing the work himself by ordering him off the job. The district court found that Diran had intentionally breached the contract and by its breach precluded Riley's full performance. The measure of damages on these facts is the contract price less the cost saved to Riley, which is the direct cost of completion, not the indirect costs occasioned solely by Diran's breach. *See* 5 A. Corbin, *Contracts* § 1094 at 509 (1964); *Restatement of Contracts* § 346(2), Comment g (1932). This is the measure applied by the court here.

The judgment of the district court is AFFIRMED.