SEXTON, Judge.
Plaintiffs appeal the rejection of their demands for the return of their deposit and for stipulated damages in a dispute over the construction of their home. We affirm in part and reverse in part.
The defendant, a licensed real estate broker, placed an advertisement in the newspaper for the sale of a house to be built on a lot which he owned. The plaintiffs responded to the advertisement and on February 4,1985, entered into a written agreement with the defendant to purchase the lot and house for $82,000. The $82,000 figure was based on a 1700 square foot house that they had selected from a magazine of house plans. By the time the plans and specifications arrived a few days later, the plaintiffs decided that they wanted a larger house. After substantial discussion concerning plaintiffs’ desire for added space, the plaintiffs and the defendant then entered into a second written contract that provided for an 1800 square foot house for $85,000.
As the construction of the house progressed, other alterations were made in the plans. In addition, the relationship between the parties deteriorated until the plaintiffs informed the defendant when the house was almost complete that they would not purchase the house. The defendant refused to refund the plaintiffs’ deposit. He then sold the house to another couple for $85,000.
The plaintiffs filed this action seeking a return of their deposit of $4,250, an additional $4,250 which the written contract stipulated as liquidated damages “in the event of default,” the cost of extra items added to the house at their expense, and attorney’s fees allowed by the contract if “[ejither party hereto fails to comply with the terms of this contract.” The defendant reconvened alleging that plaintiffs had breached the contract by not purchasing the house and sought to retain the deposit of $4,250 as liquidated damages and certain expenses alleged to have been incurred by the defendant as a result of “extras” added at the request of the original plaintiffs.
The trial court determined that the defendant, Mr. Joseph, had performed the contract by satisfactorily building the plaintiffs a home and that he was therefore entitled to keep the sum of $4,250 as liqui *1238 dated damages as a result of plaintiffs’ failure to purchase the house in accordance with the written contract. The trial court further awarded the original plaintiffs the sum of $2,819.63 representing items not called for in the contract which they had placed in the house at their expense. The court also awarded Mr. Joseph the sum of $647.58 representing expenses which he incurred at the request of plaintiffs for “extras” he installed which were not contemplated by the original plans.
The plaintiffs, the Wikes, have appealed contending that the trial court was manifestly erroneous in finding that Mr. Joseph had substantially performed this contract. Specifically, they contend that this was a contract for a home with special qualities, particularly with respect to the location of the additional area of the house and that the defendant’s failure to adhere to that contract entitles them to the return of their deposit as well as stipulated liquidated damages in that same amount. They further contend that they are entitled to contractual attorney’s fees for the breach and additional sums for extras which they placed in the house. The defendant, Mr. Joseph, has neither answered nor appealed.
First of all, we dispose of the plaintiffs’ contention that they are entitled to be reimbursed for additional “extras.” A good deal of the record concerns these extras and the trial court dealt with almost all of these in its extensive opinion. We cannot say it was clearly wrong and therefore will affirm the aspects of the judgment dealing therewith.
We proceed to assess the central issue in the case, i.e., whether the trial judge was clearly wrong in determining that this was simply a contract to build a liveable home of a certain size which the defendant substantially completed. Preliminarily in this context, we observe that the trial court did not specifically determine as a matter of fact that the contract entered into did not include an agreement to add specific footage to specific rooms. However, it appears that the opinion implicitly so determined. If so, we have no difficulty determining that any such implicit determination is clearly wrong.
The written contract signed on February 4, 1985 is a standard form entitled “Monroe-West Monroe Board of Realtors Agreement to Purchase.” In addition to listing the street address, lot number and subdivision, the contract states the price, the details of the financing the buyer is to obtain, and which party is to pay which pre-pur-chase expenses. There is no dispute that the house had not been built at that time, but the only mention of the defendant’s obligation to construct the house is the contractual language — “home to be approximately 1800 heated sq. ft. with double carport.” Other than that, the contract contains the previously mentioned provisions regarding deposit, liquidated damages and the attorney’s fees.
The plaintiffs testified that they wanted an extra 100 square feet in certain rooms.[1] Specifically, the plaintiffs wanted to add two feet to the length of the den on the first floor and about the same space to the length of the master bedroom on the second floor. The plaintiffs testified they were particularly influenced by the fact that they had determined that the size of the master bedroom in the anticipated house was the approximate size of their current bedroom which was barely large enough for them to navigate around their king size bed. The plaintiffs testified that the defendant instructed them to call Gene Ethington, the principal carpenter on the job, and ask him if the extra square footage could be added to these two rooms in this manner. According to the plaintiffs, the defendant was present when they telephoned Mr. Ethington who agreed the space could be added.
The defendant agrees that he was - present when the plaintiffs telephoned Mr. Ethington, but he disagrees with the rest of the plaintiffs’ account. He contends that he never agreed to add to the bed *1239 room. He also testified that the extra area could not be added to the master bedroom because of structural reasons. He explained that the original plans had included a basement which contained the heating and air conditioning system. Not being suitable for Louisiana soil conditions, the basement was eliminated. As a result, other provisions had to be made for the heating and cooling system. Pre-engineered trusses had to be installed on the top floor for air conditioning ducts. According to the defendant, the placement of these trusses made it impossible to add the one and one-half feet to the end of the bedroom.
However, the defendant failed to call Bruce Roberts, the engineer for the truss company, who could have substantiated this assertion. Generally, the failure of a party to call a witness who has knowledge of the material facts pertinent to the resolution of litigation gives rise to a presumption that the witness’s testimony would have been unfavorable to the party. Ray Chevrolet-Olds, Inc. v. Garbarino, 479 So.2d 374 (La.App. 3rd Cir.1985).
It should also be noted that the defendant’s trial testimony contradicted his deposition given approximately five months prior to trial. He specifically stated in his deposition that one and one-half feet and two feet were added to the top floor and bottom floor, respectively. In addition, Mr. Robert Horton, an appraiser for the plaintiffs’ lending institution, testified that the defendant had told him that two feet were to be added to the master bedroom and two feet to the den and that he made a notation of these changes on his copy of the diagram of the house introduced as P-33.
The most damaging testimony in this regard is that of Mr. Ethington, defendant’s principal carpenter. He corroborates that the plaintiffs called him to ask if the additional footage could be added to the house. He testified he told him there would be no structural difficulty in adding this space. He specifically testified that the defendant initially told him to add two feet to the length of the house in the bottom floor den and one and one-half feet to the master bedroom, which was located immediately above the den. He stated the extra space in the bedroom was not added because he received orders at a later time from Mr. Joseph not to add the space. He specifically said that Mr. Joseph “told me he’d done give them all he’d was going to give them.” Thus, two feet were added to the bottom floor, but almost no additional space was added to the master bedroom. A particularly telling statement by Mr. Ethington was his answer when asked if the house actually contained 1,800 square feet as called for. He responded that, “If it’s 1800 in it, it’s growed since I léft it.”
We therefore think it is abundantly clear that the defendant contracted to add the additional space to the master bedroom.[2] On the other hand, there is no doubt that a liveable home was constructed. The question is the effect of these determinations.
We agree with the trial court that the contract here is a contract to build governed by LSA-C.C. Arts. 2756, et seq. The builder has undertaken to construct a house for a certain stipulated price and thus any dispute resulting therefrom should be dealt with in the context of the aforesaid articles, rather than as a contract to sell. Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La.App. 3d Cir.1983), writ denied, 433 So.2d 164 (La.1983). Accord, Broussard v. Pierret, 215 So.2d 136 (La.App. 3rd Cir.1968).
When evaluating such a building contract, the question is whether substantial performance occurred as a matter of fact. Keating v. Miller, 292 So.2d 759 (La.App. 4th Cir.1974). If substantial per *1240 formance has occurred, the person for whom the building was constructed must accept it and require that the contractor repair the defects. Florida Ice Machine Corporation v. Branton Insulation, Inc., 290 So.2d 415 (La.App. 4th Cir.1974). Among factors to be considered are the extent of the defect, the degree to which the purpose of the contract is defeated, ease of correction, and the use or benefit to the intended owner of the work performed. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Keating v. Miller, supra.
In summary, this case presents a building contract in which the builder intentionally reduced the specifications on a significant portion of the building, the master bedroom. On the other hand, a liveable home was constructed. Yet it is clear the extra size was an important consideration for the contract. It is apparent that the only satisfactory remedy is the tearing out and rebuilding of this large room, including ceiling, floor and roof.
Under these circumstances, we find that substantial performance has not occurred. We are particularly influenced by the fact that the room involved is the master bedroom and the importance the plaintiffs placed on this larger size as particularly reflected by the substantially increased price. Likewise, it seems obvious that it is a defect not easily corrected. See and compare, Dickson v. Moran, 344 So.2d 102 (La.App.2d Cir.1977), [house contract not substantially performed]; Keating v. Miller, supra, [intentional reduction of house square footage not substantial performance]; Jackson v. Spurlock, 424 So.2d 1088 (La.App. 1st Cir.1982), [contract for bookshelf and other installations not substantially performed]; Scott Fence and Insulation Company, Inc. v. Boudro, 252 So.2d 458 (La.App. 4th Cir.1971), [building of fence two feet from defendant’s property and other defects not substantial performance]; Lane Wilson Company, Inc. v. Gregory, 322 So.2d 369 (La.App.2d Cir. 1975), [pool construction contract substantially performed].
Having determined that the defendant has breached this building contract by his failure to substantially perform it, it becomes necessary to reverse the judgment of the trial court awarding the defendant the sum deposited by plaintiffs as liquidated damages. Also, since the defendant has breached the contract, the plaintiffs are entitled to a return of their deposit of $4,250 and to the sum stipulated in the contract as liquidated damages, also $4,250, as well as an appropriate sum for attorney’s fees. Considering the nature of the litigation, the discovery involved, the length of the trial, and the recovery achieved on appeal, we will allow $3,500.
DECREE
Premises considered,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the first paragraph of the judgment appealed herein awarding $4,250 to Charles E. Joseph, d/b/a Joseph Realty Company, against Gary D. Wike and Mary Jo Wike is reversed and deleted.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Gary D. Wike and Mary Jo Wike against the defendant, Charles E. Joseph d/b/a Joseph Realty Company, for the sum of $8,500, representing $4,250 as return of deposit and $4,250 as liquidated damages.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Gary D. Wike and Mary Jo Wike against the defendant, Charles E. Joseph d/b/a Joseph Realty Company, for the sum of $3,500 as attorney’s fees.
All sums are awarded with appropriate legal interest and all costs of this litigation are assessed against the defendant, Charles E. Joseph d/b/a Joseph Realty Company.
In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED IN PART and RENDERED.

. The house plans that were used showed that the house had 1710 square feet; therefore, only 90 square feet actually had to be added.

. Indeed, the trial court and the parties hereto have treated the written contract and the oral understandings as part and parcel of the same overall contract. There was no objection regarding the introduction of parol evidence and no argument has been made to us on that issue in an effort to preclude consideration of any evidence regarding an oral agreement contemporaneous to the second written contract — and correctly so. See, Gulf States Finance Corporation v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965); Edwards v. State, Through Department of Corrections, 244 So.2d 69 (La. App. 1st Cir.1971).