Deep AGGARWAL, Plaintiff, Appellant,

v.

PONCE SCHOOL OF MEDICINE,
Defendant, Appellee.

No. 85–1798.

United States Court of Appeals,
First Circuit.

Heard June 3, 1987.

Decided Jan. 19, 1988.

Fernando L. Gallardo–Aramburu with whom Woods & Woods, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Hector R. Cuprill, Ponce, P.R., with whom Jorge P. Sala, San Juan, P.R., was on brief, for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

RE, Chief Judge:

In this diversity action, Dr. Deep Aggarwal sued his former employer, the Ponce School of Medicine (PSM), for breach of contract in not having given timely notice that his one-year employment contract would not be renewed. The jury found for the school, and Dr. Aggarwal appeals the judgment entered against him by the United States District Court for the District of Puerto Rico.

Specifically, Dr. Aggarwal contends that the district court committed error in having denied his motions for a directed verdict and for judgment notwithstanding the verdict. He also contends that the trial judge's remarks, gestures, and adverse rulings manifested an attitude of bias which was prejudicial to his case.

Two questions are presented on this appeal: first, whether the evidence supporting plaintiff was so overwhelming that the district court should have directed a jury verdict, or entered judgment in his favor notwithstanding the verdict; and second, whether the manner in which the trial judge conducted the trial deprived the plaintiff of the right to a fair trial by an impartial judge.

Since the court holds that the district court did not abuse its discretion in enter-

ing judgment on the jury verdict, and that there is no rational basis for any of the charges of bias, the judgment of the district court is affirmed.

## THE FACTS

Dr. Deep Aggarwal entered into an employment contract with the Ponce School of Medicine in September 1980. The PSM was formerly the medical school of the Catholic University of Puerto Rico (CUPR). The written contract provided for a one-year term as a nontenured associate professor, and stated that it contained "the complete agreement between the parties." Dr. Aggarwal, however, claims that the PSM administration entered into a special arrangement which permitted outside research during the academic year.

The contract also provided that the rules and regulations of the PSM, pertaining to faculty members, would opportunely be provided. Although PSM did not promulgate a set of regulations until 1985, Dr. Aggarwal asserts that during the 1979–1980 academic year, while employed at the CUPR School of Medicine, he was told that the rules and regulations contained in the CUPR Faculty Manual would be used as guidelines until PSM adopted its own regulations. Hence, Dr. Aggarwal asserts that the reference in the contract pertained to the existing rules of CUPR.

On May 5, 1981, Dr. Aggarwal was notified that his contract of employment with PSM would not be renewed for the following academic year. In this action against PSM, Dr. Aggarwal alleged that PSM breached the contract by failing to notify him before March 1 of its intention not to renew his contract, as required by the Faculty Manual of CUPR. He also alleged that, as a result of the untimely notice, he was unable to find employment for the following year, and remained unemployed at the date this action was commenced.

PSM contended that it was not bound by the renewal provisions of the CUPR Faculty Manual, and that the terms of the written contract constituted the totality of the

* Chief Judge of the United States Court of International Trade, sitting by designation.

school's obligation to Dr. Aggarwal. The contract contained no provision pertaining to notice, and expired on July 31, 1981.

Voluminous conflicting testimony was offered at the 8-day trial as to these issues, as well as to the performance of both parties under the contract. Although the complaint alleged additional wrongdoing by PSM and requested extensive damages, these claims for relief were either found to be unsubstantiated or barred by the Puerto Rican Civil Code. After plaintiff's motion for directed verdict was denied by the court, the jury found that PSM was not liable to Dr. Aggarwal for breach of contract. The district court also denied the motion made for judgment notwithstanding the verdict and entered judgment for the defendant, PSM.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Dr. Aggarwal asserts that, based on the evidence presented at the trial, the only reasonable conclusion the jury could have reached was to find PSM liable for breach of contract. The standard used to evaluate a motion for a directed verdict or a judgment n.o.v. is the same in both the trial court and the court of appeals, and poses a heavy burden on the moving party. This is especially true when, as in this case, the moving party bears the burden of persuasion. *See Insurance Co. of North America v. Musa*, 785 F.2d 370, 372 (1st Cir. 1986). As the court stated in the *Musa* case, "we are especially reluctant to require a directed verdict or the entry of judgment n.o.v. in favor of a party with the burden of persuasion." *Id.; see Service Auto Supply Co. v. Harte & Co.*, 533 F.2d 23, 24–25 (1st Cir.1976); 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2535, at 590–91 (1971).

To determine whether sufficient evidence was offered at trial to support the jury's factual findings, the court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all the favorable inferences that may be drawn. *See Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 989 (1st Cir.1978); *Dumas v. Mac-Lean*, 404 F.2d 1062, 1064 (1st Cir.1968).

When considering the evidence presented at the trial, "the court may neither weigh the evidence, pass on the credibility of witnesses, [n]or substitute its judgment for that of the jury." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir. 1986). Again, as stated in the *Musa* case, "it is for jurors, not judges, to weigh the evidence and determine the credibility of witnesses." 785 F.2d at 372.

On appellate review it is clear that the verdict must be upheld if the evidence fairly would support different conclusions, and "fair minded men may draw different inferences and reasonably disagree as to what the verdict should be...." *Dumas*, 404 F.2d at 1064; *see M.C. Carlisle & Co. v. Cross*, 386 F.2d 672, 674–75 (1st Cir.1967); *Hobart v. O'Brien*, 243 F.2d 735, 741 (1st Cir.) (quoting *American Fidelity & Casualty Co. v. Drexler*, 220 F.2d 930, 932–33 (5th Cir.1955)), *cert. denied*, 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed.2d 42 (1957). Hence, the moving party will prevail only when the court finds that the evidence points "so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at [the] conclusion" actually reached. *Chedd–Angier Production Co. v. Omni Publications Int'l, Ltd.*, 756 F.2d 930, 934 (1st Cir.1985); *see deMars v. Equitable Life Assurance Soc'y*, 610 F.2d 55, 57 (1st Cir.1979).

■ Despite this burden of proof, Dr. Aggarwal contends that the evidence does not sustain the jury's verdict. According to Dr. Aggarwal, the evidence, which consisted of documents and extensive testimony, supports his contention that PSM breached the employment contract by failing timely to notify him of its intention not to renew the contract. Dr. Aggarwal maintains that his employment contract with PSM was governed by the rules and regulations of the CUPR Faculty Manual until the PSM adopted its own. Hence, he contends that PSM breached the contract by failing to notify him by March 1 of the nonrenewal of his contract.

The written contract between the parties provided that Dr. Aggarwal would "dedicate the weekly hours required of the faculty properly, as well as to office work in diverse functions such as tutoring, academic orientation and assistance in administrative tasks of the Faculty...." In addition, the fifth clause of the contract states that "[t]his contract contains the complete agreement between the parties and ... leave[s] without effect any other existing agreement. The parties express that they have not made representations to each other of any class in relation to the contract which does not appear in this document."

Although the contract stated that "[t]he School opportunely will furnish ... the Faculty Manual," it did not mention the CUPR Faculty Manual. Furthermore, the contract did not contain any requirements for notice in the case of nonrenewal, and specifically stated that it was in force from August 1, 1980 to July 1, 1981.

At the trial, Dr. Aggarwal testified that he was told by Dr. José Correa, a Dean of CUPR School of Medicine, who subsequently became a Dean at PSM, that PSM would follow the former school's manual. Hence, Dr. Aggarwal asserts that the CUPR rules are the rules referred to in the employment contract. This testimony, however, directly contradicts that of other members of the PSM faculty. Dean Correa testified that he informed the faculty of the CUPR School of Medicine that he believed that PSM would use the CUPR rules and regulations as a guideline, but he denied that he had stated that they would be adopted or incorporated by PSM. Dr. Félix Cortés, chairman of the Medicine Department at CUPR School of Medicine and at PSM, testified that, as one of the faculty members involved in drafting the PSM regulations, he planned to use the CUPR regulations along with those from other medical schools, as models.

The language of the written contract, and testimony of PSM administrators, provide a sufficient basis for the finding of the jury that the CUPR regulations were not applicable, and were not incorporated into the agreement. In view of the conflicting evidence, and the different conclusions that could have been drawn, it was reasonable for the jury to have found that PSM did not breach its employment contract with Dr. Aggarwal.

■ Furthermore, even if the jury had found that the renewal procedures of CUPR were applicable, the liability of PSM might still have been precluded by Dr. Aggarwal's deficient performance of his contractual obligations. The employment contract between Dr. Aggarwal and PSM states that violations of the contract "may give rise to a termination of this contract." The contract also states that "[t]his contract may be cancelled on account of physical or mental disability or incompetence duly established." Most of the testimony at the trial pertained to the performance of the respective contractual duties of both parties, and presented widely conflicting versions of the events during the school year. It cannot be questioned, therefore, that much depended upon the jury's evaluation of the credibility of the witnesses on the conflicting versions of the facts and events presented.

In considering whether sufficient evidence existed to support the verdict, the court may disregard testimony only if it " 'is in irreconcilable conflict with immutable laws of physics or is wholly inconsistent with established and uncontroverted physical facts.' " *Musa*, 785 F.2d at 374 (quoting *Kansas City Pub. Serv. Co. v. Shephard*, 184 F.2d 945, 947 (10th Cir.1950)). The court may also disregard the testimony if it is "unsupported self-serving testimony that flies in the teeth of unimpeachable contradictory evidence and universal experience." *New England Merchants Nat'l Bank v. Rosenfield*, 679 F.2d 467, 473 (5th Cir. Unit B 1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 819, 74 L.Ed.2d 1017 (1983). Clearly, therefore, the party with the burden of persuasion can only prevail by presenting " 'testimony the jury is not at liberty to disbelieve....' " *Jordan v. United States Lines, Inc.*, 738 F.2d 48, 49 (1st Cir.1984) (quoting *Service Auto Supply Co. v. Harte & Co.*, 533 F.2d 23, 25 (1st Cir.1976)).

Dr. Aggarwal testified that he had complied with the contract because it encompassed a special arrangement or agreement with the PSM officials. According to Dr. Aggarwal, Dean Correa had agreed to a special arrangement which permitted Dr. Aggarwal to do research and studies at another University while performing his teaching responsibilities at PSM. Even in the absence of the substantial rebutting evidence presented by PSM, the contradictions which emerged in Dr. Aggarwal's version would have been sufficient to permit the jury to doubt the reliability of his account, and thus, sustain the jury's factual findings.

Several examples suffice to show that there is ample justification in the jury's findings of fact. Dr. Aggrawal testified that he was permitted to miss scheduled classes, and remain absent from PSM by virtue of the flexibility he was granted to do outside research. Yet, he also testified that, by April 1980, he was aware of the scheduled classes PSM expected him to teach. Thus, PSM afforded Dr. Aggarwal sufficient advance notice properly to schedule his other commitments. Nonetheless, many scheduled classes were missed, and Dr. Aggarwal spent only 5 days at PSM during the fall semester. Similarly, Dr. Aggarwal agreed and admitted that duties other than teaching, such as counseling and evaluating students, assisting in administrative functions, and exam giving and grading, were part of the job description of a medical school professor. Nevertheless, he claimed to have been excused from all these duties while he engaged in authorized research. During this time, however, Dr. Aggarwal was enrolled in an unaccredited medical school in Ciudad Juárez, Mexico. Although he knew that the semester at PSM did not end until December 23, he failed to return to Puerto Rico to fulfill his obligations after his own medical studies in Mexico were completed on December 10. In addition, Dr. Aggarwal did not return until January 30, which was too late to teach the first of his scheduled classes of the spring semester.

The record is replete with similar instances of nonperformance of teaching duties throughout the academic year, all of which Dr. Aggarwal asserted were authorized and validated by PSM. In addition, letters subsequently written by Dr. Aggarwal to the Dean of PSM contain admissions by him of taking "too much liberty, much more than I was entitled to." It would seem clear that it is not necessary to recount the extensive unimpeached contrary testimony by PSM officials. In essence, Dean Correa testified that he agreed that, during the academic year 1980–1981, Dr. Aggarwal would be granted flexibility in his teaching programs to do research for his academic improvement, and that if he could not do the research at the school facilities he could do it elsewhere. Dean Correa, however, stated that he did not grant Dr. Aggarwal permission to do research without requesting permission, pursuant to school policy. He also testified that at no time was Dr. Aggarwal given permission to enroll in an unaccredited medical school, nor to miss scheduled classes and other teaching responsibilities.

It is beyond dispute that the resolution of these important factual questions depended upon an assessment of the credibility of the witnesses, a matter clearly within the province of the jury. Upon this record, it cannot be doubted that Dr. Aggarwal did not sustain his burden that the only rational conclusion the jury could have reached was in his favor.

## II. *Allegations of Bias*

Dr. Aggarwal contends that the trial judge conducted the trial in a manner that deprived him of the right to a fair trial by an impartial judge. To sustain his allegations of bias by the trial judge, Dr. Aggarwal excerpts 27 instances which he claims reveal a hostile and biased attitude, which influenced the jury to such an extent that prejudicial error was committed. Indeed, Dr. Aggarwal asks this court to grant him a new trial, or enter judgment in his favor.

It is not questioned that bias and improper conduct by a trial judge may be grounds for a new trial. *See* 11 C. Wright & A. Miller, *Federal Practice and Proce-*

*dure,* § 2809, at 66 (1973 & Supp.1982). To sustain a charge of improper conduct, however, the reviewing court must find that a party was so seriously prejudiced as to be deprived of a fair trial. *See, e.g., Crowe v. Dimanno,* 225 F.2d 652, 659 (1st Cir.1955). Mere active participation by a trial judge does not deprive a party of a fair trial. *See, e.g., Westminster Elec. Corp. v. Salem Eng'g and Constr.,* 712 F.2d 720, 722–23 (1st Cir.1983); *Goldman v. Fenn,* 252 F.2d 47, 48 (1st Cir.1958) (per curiam). Furthermore, it is necessary to consider isolated incidents in light of the entire transcript so as to "guard against magnification on appeal of instances which were of little importance in their setting." *Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 470–71, 86 L.Ed. 680 (1942).

In *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), Chief Justice Hughes, writing for a unanimous court, outlined the role of a federal trial judge as follows:

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.... It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination.

*Id.* at 469, 53 S.Ct. at 698–99 (citations omitted). Hence, it is within the trial judge's discretion to comment on the facts and evidence. It is only if the trial judge exceeds the limitations upon the power to comment, that the conduct may constitute reversible error. *See, e.g., McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 761 (5th Cir.1979).

Dr. Aggarwal asserts that the trial judge expressed opinions as to the value or weight that should be given to certain evidence. Dr. Aggarwal asserts that these comments "were prejudicial to [him] and influenced the jury to such an extent that irreversible [sic] error was committed." Dr. Aggarwal also charges that the trial judge disparaged his attorneys, and discredited their abilities to try the case.

Although most of the remarks complained of were made during bench conferences, there is a serious dispute whether they were made within the hearing of the jury. Dr. Aggarwal claims that, in any event, the comments intimidated his counsel, thereby limiting their effectiveness. The court has carefully reviewed the judge's remarks during trial, and concludes that the record does not support the charge that the trial judge was biased, or prejudiced the jury.

■ In support of his charge of bias, Dr. Aggarwal cites comments made by the judge, such as, "I will let it in for whatever value it may have," and "whatever bearing that may have in this case—at present I do not see any bearing—I will let you decide that." In an effort to assist the jury, it is within the power of the trial judge to comment on the evidence, including its admissibility. *See United States v. Jacquillon,* 469 F.2d 380, 387 (5th Cir.1972); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2557 (1971). In this case, the court does not find the comments that were made to be outside the bounds of proper judicial conduct. Moreover, the court does not believe that the comments had a prejudicial effect on the outcome of the trial. The judge properly instructed the jury, throughout the trial and during the final instructions, that they, the jurors, were the sole judges of the facts and were not bound by the judge's comments. *See United States v. Jacquillon,* 469 F.2d at 387 (judge may comment on evidence provided judge makes it clear to jury that all matters of fact are submitted for their determination).

■ Dr. Aggarwal also contends that the trial court erroneously excluded certain documents offered as evidence. These documents pertained to Dr. Aggarwal's qualifications, which were not a matter at issue in this suit. As PSM correctly indicates in

its brief, these documents were properly excluded as irrelevant, and, furthermore, they constituted hearsay, clearly outside the scope of Rule 803(6) of the Federal Rules of Evidence.

■ Finally, Dr. Aggarwal's objections to the instructions given to the jury as to damages are barred by his failure to make a timely objection at the trial. Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." We, therefore, reject this contention. Moreover, since we hold that Dr. Aggarwal received a fair trial, the jury's finding of no liability renders this issue moot.

### CONCLUSION

In view of the foregoing, it is the holding of the court that the motions for directed verdict and judgment n.o.v. were properly denied by the trial court. We also hold that Dr. Aggarwal's charges of bias and judicial misconduct have not been substantiated. Accordingly, the judgment of the district court is affirmed.