993 F.2d 1531
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Marie Louise SANTONI-LORENZI, Plaintiff, Appellant,
v.
F.W. WOOLWORTH COMPANY, Defendant, Appellee,
v.
OTIS ELEVATOR COMPANY, Third Party Defendant.
 No. 92-2109.
 United States Court of Appeals,
First Circuit.
 May 27, 1993
 
 Appeal from the United States District Court for The District of Puerto Rico [Hon. Gilerto Gierbolini, U.S. District Judge]
 Marie Louise Santoni-Lorenzi on brief pro se.
 Amancio Arias Guardiola on brief for appellee.
 D.PUERTO RICO
 AFFIRMED
 Before Breyer, Chief Judge, Torruella and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 This is a pro se appeal from a jury verdict in a personal injury case and from a district court order dismissing plaintiff-appellant's motion for a new trial on the grounds of jury misconduct. After a three-day trial at which appellant was represented by counsel, the jury determined that appellant was comparatively negligent for 95 percent of the $5,000 awarded to her in damages. The award was therefore reduced to $250.00. Appellant moved for a mistrial on the grounds of jury misconduct. After a full evidentiary hearing, the district court denied the motion. We affirm both the judgment and the denial of the motion for mistrial.
 
 Background
 
 2
 Appellant filed this diversity action in the United States District Court for the District of Puerto Rico against defendant F.W. Woolworth Co.[1] The complaint alleged that on December 16, 1988, appellant Mary Louise Santoni was injured while riding on an escalator in one of defendant's stores. Appellant alleged that the escalator was running at an excessive speed, causing her to lose her balance and fall. Appellant further claimed that the emergency button to stop the escalator had been covered with tape, making it inaccessible, and that Woolworth's employees ignored calls for help.
 
 
 3
 Appellant, who was in her early eighties when the accident occurred, allegedly suffered great pain and continues to suffer from hearing loss and irregular heart rate, dizziness, fear and depression as a result of appellee's negligence. Appellant's complaint sought $500,000.00 in damages.
 
 
 4
 A three-day jury trial was held from February 24, 1992 through February 26, 1992. After the jury verdict was entered, appellant filed a motion for mistrial on March 2, 1992. The motion alleged that relatives of appellant had reported seeing a juror talking with defendant's witnesses in the hallway of the courthouse before the jury had reached a verdict. Attached to the motion were sworn statements by three of appellant's relatives indicating that on February 26, 1992, during a court recess, they observed a juror talking with witnesses and counsel for the defendant.
 
 
 5
 On May 1, 1992, the district court held a hearing on the motion for mistrial. Appellant, who was represented by counsel at the hearing, called three witnesses, a court security officer and two of appellant's relatives who had reported witnessing the alleged misconduct. Appellee called four witnesses, including the juror accused of the alleged misconduct, a court security officer and the two witnesses with whom the juror was alleged to have conversed. All of appellee's witnesses denied that there had been any communication between the juror and the witnesses and attorney for the appellee. The attorney for the appellee also testified that he had not spoken to the juror.
 
 
 6
 In an opinion dated August 4, 1992, the district court found that the jury "remained impartial throughout the trial and during the crucial deliberations." The court credited appellee's witnesses and concluded that appellant had failed to produce credible evidence of jury misconduct. The court noted that appellee had failed to report the alleged misconduct to the court or to their attorney until after the jury verdict was entered, although more than eight hours elapsed between the alleged misconduct and the announcement of the jury's verdict. The court also found that "the verdict rendered is clearly consistent with the weight of evidence adduced at trial." Therefore, the district court denied appellant's motion for a new trial.
 
 Discussion
 
 7
 On appeal, Mrs. Santoni argues that the jury verdict finding her comparably negligent for 95% of the damages caused was contrary to the weight of the evidence. She also argues that the district court abused its discretion in denying her motion for a mistrial based upon jury misconduct. Finally, she finds fault with the court's jury instructions.
 
 
 8
 Sufficiency of Evidence.
 
 
 9
 Appellant failed to preserve the issue of sufficiency of the evidence for appeal. She neither moved for judgment as a matter of law at the close of evidence, nor renewed her motion after entry of judgment. See Fed. R. Civ. P. 50. Nonetheless, even if appellant had preserved the issue for appeal, she would not prevail under the following applicable standard of review:
 
 
 10
 To determine whether sufficient evidence was offered at trial to support the jury's factual findings, the court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all the favorable inferences that may be drawn.
 
 
 11
 Aggarwal v. Ponce School of Medicine, 837 F.2d 17, 19 (1st Cir. 1988). On appeal, the jury's verdict must be upheld unless "the court finds that the evidence points 'so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at [the] conclusion reached.' " Id. (quoting Chedd-Angier Production Co. v. Omni Publications Int'l, Ltd., 756 F.2d 930, 934 (1st Cir. 1985)).
 
 
 12
 Appellant argues that "there can be no contributory negligence on the part of Plaintiff in [the] special circumstances [of this case]." Those circumstances are "uncontroverted evidence describing the electric stairways as an unregulated and unsyncronized electric stairway" on which the elderly plaintiff was "violently thrown back ..., and then dragged up to the second floor ... without any help or assistance of the store's employees." According to appellant, "the uncontroverted evidence as to the total lack of adequate control by the Store of the high velocity movement of the electric stairway was responsible for the unfortunate accident amounting to 100% of the negligence of the Store."
 
 
 13
 Contrary to appellant's allegations, however, the evidence was far from uncontroverted. The following testimony was presented, from which the jury could have found that appellant was negligent in her use of the escalator and that appellee's negligence was only marginally responsible for the accident. Mr. Mendez, a supervisor at appellee's store at the time of the accident, testified that he saw appellant struggling with her granddaughter before boarding the escalator and advised them that appellant should not be made to ride the escalator in her condition and that there was an alternative means of access to the second floor. He further testified that when he later heard a commotion and saw that appellant had fallen on the escalator, he immediately shut it off, using the emergency button on the first floor. Mr. Mendez stated that after the accident, the escalator was turned back on and that it continued to work "perfectly". Finally, he testified that he did not observe that the speed of the escalator that day differed from its speed on any other day before or since the accident.
 
 
 14
 Appellee's other witness, Mr. Grimani, manager of the Woolworth store at the time of the accident, testified that in his ten years of working at the store he never saw the escalator accelerate beyond its normal operating speed nor received a complaint regarding its speed. He stated that in his 33 years of employment with Woolworth, he had never heard of an escalator accelerating.
 
 
 15
 Third party defendant, Otis Elevator Co., put on an expert witness in electronics, Mr. Abraham. Mr. Abraham testified that the type of motor which drives the escalator makes acceleration impossible. He explained that the only way that the speed of an escalator can be changed is to replace the gear box and motor. Mr. Abraham testified that the escalator in question ran at 90 feet per minute, the industry standard, on the day of the accident.
 
 
 16
 Appellant introduced contrary evidence in support of her theory that the accident was caused by acceleration of the escalator and the appellee's employees' inability to control it. Mrs. Santoni testified that when she stepped onto the escalator and placed her hand on the handrail, she felt a strong pull which caused her to lose her balance and fall backward. Mrs. Monegro, another customer at appellee's store on the day of the accident, testified that she noticed that the escalator going from the first to the second level was "going too fast". She further testified that when she learned that a lady had fallen on the escalator, she looked for the emergency button to stop the escalator but was unable to find it.
 
 
 17
 Mr. Freyre, appellant's grandson, testified that he was at the store with his grandmother on the day of the accident and noticed that the escalator between the first and second level was running "very fast". He further testified that after his grandmother's accident he tried to stop the escalator but could not locate the emergency button. Mr. Freyre stated that he later saw an employee remove black tape covering the emergency button, before pushing the button to stop the escalator. Finally, he testified that when he returned to the store, two days later, the escalator was running at a normal (slower) speed and that tape was no longer covering the emergency buttons.
 
 
 18
 Mrs. Freyre, appellant's granddaughter, testified that she was with appellant at the time of the accident. She stated that her grandmother was told by a Woolworth employee that the escalator was the only means of access to the second floor. Mrs. Freyre testified that the escalator "was going at a high rate of speed" when appellant stepped onto it. Finally, Mrs. Rivera, another customer at appellant's store on the day of the accident, testified that she rode the same escalator as appellant, shortly before appellant's accident, and noticed that it was fast. She stated that when she saw appellant fall she tried to find the emergency button to stop the escalator, but was unable to locate it. Appellant also introduced into evidence at the trial five accident reports of other falls on the escalators in appellant's store during 1988.
 
 
 19
 Based upon the evidence presented (summarized above), the jury concluded that appellee was negligent and that its negligence proximately caused some of the injury or damage suffered by appellant. It further found, however, that appellant was comparatively negligent and that her negligence was responsible for 95% of the damages. The evidence, although conflicting, does not point so overwhelmingly in favor of appellant that a reasonable jury could not have arrived at this conclusion. "[I]t is for jurors, not judges, to weigh the evidence and determine the credibility of witnesses." Insurance Co. of North America v. Musa, 785 F.2d 370, 372 (1st Cir. 1986). It was the jury's right to credit appellee's witnesses and to conclude that the escalator was not running at an excessive speed and that appellant's own actions, for example her unsteadiness or misplacement of her cane, caused her to fall. The jury verdict is supported by sufficient evidence.
 
 Jury Misconduct
 
 20
 A district court's decision denying a motion for new trial will not be reversed except for abuse of discretion. Real v. Hogan, 828 F.2d 58,61 (1st Cir. 1987). The district court, following appellant's allegation of juror misconduct, properly carried out its duty to investigate to ascertain whether the misconduct actually occurred, and if so, whether it was prejudicial. See United States v. Boylan, 898 F.2d 230, 258 (1st Cir.), cert. denied, 498 U.S. 849 (1990). The district court held a full evidentiary hearing at which witnesses for appellant and appellee testified and were cross-examined under oath.
 
 
 21
 Upon review of the record, including the transcript of the evidentiary hearing, we conclude that the district court did not abuse its discretion in determining that the alleged misconduct did not occur. At the evidentiary hearing, appellant's principal witnesses were her son and grandson who testified that they saw one of the jurors converse with witnesses and counsel for the defendants in the hallway of the courthouse on the morning of the final day of the trial, eight hours before the verdict was rendered. Appellee called the juror, witnesses and attorney alleged to have engaged in the misconduct to testify. All of them denied that the conversation had ever occurred.
 
 
 22
 The juror testified that he had been approached by a woman, unconnected with the case, outside of the courthouse, who told him that one of appellee's witnesses was from the same home town as the juror. The juror stated, however, that he was not influenced by this information. Our review of the record supports the district court's conclusion that sufficient evidence was produced to show that the communication did not have a prejudicial effect. There was no abuse of discretion. See United States v. O'Brien, 972 F.2d 12, 14 (1st Cir. 1992).
 
 
 23
 Moreover, by failing to inform the district court about the alleged juror misconduct until five hours after the verdict was rendered, although she had allegedly become aware of the impropriety eight days before the verdict was entered, appellant waived the right to complain about such conduct. See United States v. Morris, 977 F.2d 677 (1st Cir. 1992), cert. denied, U.S., 113 S.Ct. 1588 (1993). Even absent waiver, however, we conclude that there was no miscarriage of justice and therefore affirm the district court's denial of appellant's motion for a new trial.
 
 Jury Instructions
 
 24
 Appellant's final argument is that the district court erred in instructing the jury. First, appellant argues that the court in its opinion mischaracterized the case as a "slip and fall" case and that its misconception of the case was reflected in the jury instructions. Second, appellant contends that the district court erred in instructing the jury regarding dismissal of the third-party defendant as follows:
 
 
 25
 Otis Elevator Company is no longer with us. The case of Otis was disposed of in such a manner that you don't need to concern yourself with anything pertaining to it. Forget about it. Otis is no longer a part of this case and I repeat, you don't need to be concerned with it.
 
 
 26
 Appellant argues that this instruction sent a message to the jury that the malfunction of the escalator was not responsible for the accident.
 
 
 27
 The record indicates that appellant failed to object to the jury instructions before the jury retired to consider the verdict, as required by Fed. R. Civ. P. 51. Rule 51 provides, in relevant part, as follows:
 
 
 28
 No party may assign as error the giving of the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 29
 "In the absence of compliance with the dictates of Rule 51, we review for plain error." Elgabri v. Lekas, 964 F.2d 1255, 1259 (1st Cir. 1992). Our review of the district court's instructions to the jury does not reveal any "miscarriage of justice." Id. at 1259. Therefore, we find no plain error in the jury instructions.
 
 
 30
 Although the district court referred to this case as a "slip and fall" case in its opinion, it did not do so in its jury instructions. Moreover, such a reference would not have constituted plain error. The detailed instructions given corrected any misconception that the term "slip and fall" might have conveyed. The court correctly stated current Puerto Rico law with respect to negligence in the context of this case. See Mas v. United States, No. 92-1392, slip op. at 7-8 (1st Cir. Jan. 28, 1993). Moreover, the jury found that appellee was negligent. There was no plain error here.
 
 
 31
 Appellant fares no better with her argument regarding the court's instructions about the dismissal of Otis Elevator Co. Even assuming that the portion of the instructions relating to the third party defendant, taken alone, might have improperly directed the jury's attention away from the role of the escalator in causing the accident, when we consider the instructions as a whole, it is clear that no miscarriage of justice resulted. Cf. United States v. O'Brien, 972 at 16 ("so long as the charge, taken as a whole, correctly conveys the concept of reasonable doubt to the jury, no reversible error exists"). The district court carefully instructed the jury that appellee had a duty to "maintain the business place in such a safe condition that one who is induced to enter the premises, would not suffer damage." As thus described, appellant's duty clearly extended to maintenance of the escalator. The manufacturer's dismissal from the case did not preclude a finding that the escalator was not maintained in "a safe condition."
 
 
 32
 For all of the foregoing reasons, the judgment and the denial of appellant's motion for mistrial are affirmed. Appellee's request for damages and costs pursuant to Fed. R. Civ. P. 38 is denied.
 
 
 
 [1]
 Otis Elevator Co. was brought into the case as a third party defendant, but the court granted Otis' motion to dismiss the action against it on the basis of the evidence presented at trial