June 11, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-2109

 MARIE LOUISE SANTONI-LORENZI,

 Plaintiff, Appellant,

 v.

 F.W. WOOLWORTH COMPANY,

 Defendant, Appellee,

 v.

 OTIS ELEVATOR COMPANY,

 Third Party Defendant.

 

 ERRATA SHEET

The opinion of this Court issued on May 27, 1993 is amended as
follows:

Page 11, line 6: Change "days" to "hours."

May 27, 1993 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2109

 MARIE LOUISE SANTONI-LORENZI,
 Plaintiff, Appellant,

 v.

 F.W. WOOLWORTH COMPANY,
 Defendant, Appellee,

 v.

 OTIS ELEVATOR COMPANY,
 Third Party Defendant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Gilberto Gierbolini, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Torruella and Cyr, Circuit Judges.
 

 

Marie Louise Santoni-Lorenzi on brief pro se.
 
Amancio Arias Guardiola on brief for appellee.
 

 

 

 Per Curiam. This is a pro se appeal from a jury
 

verdict in a personal injury case and from a district court

order dismissing plaintiff-appellant's motion for a new trial

on the grounds of jury misconduct. After a three-day trial

at which appellant was represented by counsel, the jury

determined that appellant was comparatively negligent for 95

percent of the $5,000 awarded to her in damages. The award

was therefore reduced to $250.00. Appellant moved for a

mistrial on the grounds of jury misconduct. After a full

evidentiary hearing, the district court denied the motion.

We affirm both the judgment and the denial of the motion for

mistrial.

 Background
 

 Appellant filed this diversity action in the United

States District Court for the District of Puerto Rico against

defendant F.W. Woolworth Co.1 The complaint alleged that on

December 16, 1988, appellant Mary Louise Santoni was injured

while riding on an escalator in one of defendant's stores.

Appellant alleged that the escalator was running at an

excessive speed, causing her to lose her balance and fall.

Appellant further claimed that the emergency button to stop

the escalator had been covered with tape, making it

 

1. Otis Elevator Co. was brought into the case as a third
party defendant, but the court granted Otis' motion to
dismiss the action against it on the basis of the evidence
presented at trial.

 -4-

inaccessible, and that Woolworth's employees ignored calls

for help. Appellant, who was in her early eighties when the

accident occurred, allegedly suffered great pain and

continues to suffer from hearing loss and irregular heart

rate, dizziness, fear and depression as a result of

appellee's negligence. Appellant's complaint sought

$500,000.00 in damages.

 A three-day jury trial was held from February 24,

1992 through February 26, 1992. After the jury verdict was

entered, appellant filed a motion for mistrial on March 2,

1992. The motion alleged that relatives of appellant had

reported seeing a juror talking with defendant's witnesses in

the hallway of the courthouse before the jury had reached a

verdict. Attached to the motion were sworn statements by

three of appellant's relatives indicating that on February

26, 1992, during a court recess, they observed a juror

talking with witnesses and counsel for the defendant.

 On May 1, 1992, the district court held a hearing

on the motion for mistrial. Appellant, who was represented

by counsel at the hearing, called three witnesses, a court

security officer and two of appellant's relatives who had

reported witnessing the alleged misconduct. Appellee called

four witnesses, including the juror accused of the alleged

misconduct, a court security officer and the two witnesses

with whom the juror was alleged to have conversed. All of

 -5-

appellee's witnesses denied that there had been any

communication between the juror and the witnesses and

attorney for the appellee. The attorney for the appellee

also testified that he had not spoken to the juror.

 In an opinion dated August 4, 1992, the district

court found that the jury "remained impartial throughout the

trial and during the crucial deliberations." The court

credited appellee's witnesses and concluded that appellant

had failed to produce credible evidence of jury misconduct.

The court noted that appellee had failed to report the

alleged misconduct to the court or to their attorney until

after the jury verdict was entered, although more than eight

hours elapsed between the alleged misconduct and the

announcement of the jury's verdict. The court also found

that "the verdict rendered is clearly consistent with the

weight of evidence adduced at trial." Therefore, the

district court denied appellant's motion for a new trial. 

 Discussion
 

 On appeal, Mrs. Santoni argues that the jury

verdict finding her comparably negligent for 95% of the

damages caused was contrary to the weight of the evidence.

She also argues that the district court abused its discretion

in denying her motion for a mistrial based upon jury

misconduct. Finally, she finds fault with the court's jury

instructions. 

 -6-

 Sufficiency of Evidence.
 

 Appellant failed to preserve the issue of

sufficiency of the evidence for appeal. She neither moved

for judgment as a matter of law at the close of evidence, nor

renewed her motion after entry of judgment. See Fed. R. Civ.
 

P. 50. Nonetheless, even if appellant had preserved the

issue for appeal, she would not prevail under the following

applicable standard of review:

 To determine whether sufficient evidence was
 offered at trial to support the jury's factual
 findings, the court must view the evidence in the
 light most favorable to the nonmoving party, giving
 that party the benefit of all the favorable
 inferences that may be drawn.

Aggarwal v. Ponce School of Medicine, 837 F.2d 17, 19 (1st
 

Cir. 1988). On appeal, the jury's verdict must be upheld

unless "the court finds that the evidence points 'so strongly

and overwhelmingly in favor of the movant that a reasonable

jury could not have arrived at [the] conclusion reached.'"

Id. (quoting Chedd-Angier Production Co. v. Omni Publications
 

Int'l, Ltd., 756 F.2d 930, 934 (1st Cir. 1985)).
 

 Appellant argues that "there can be no contributory

negligence on the part of Plaintiff in [the] special

circumstances [of this case]." Those circumstances are

"uncontroverted evidence describing the electric stairways as

an unregulated and unsyncronized electric stairway"on which

the elderly plaintiff was "violently thrown back . . ., and

then dragged up to the second floor . . . without any help or

 -7-

assistance of the store's employees." According to

appellant, "the uncontroverted evidence as to the total lack

of adequate control by the Store of the high velocity

movement of the electric stairway was responsible for the

unfortunate accident amounting to 100% of the negligence of

the Store."

 Contrary to appellant's allegations, however, the

evidence was far from uncontroverted. The following

testimony was presented, from which the jury could have found

that appellant was negligent in her use of the escalator and

that appellee's negligence was only marginally responsible

for the accident. Mr. Mendez, a supervisor at appellee's

store at the time of the accident, testified that he saw

appellant struggling with her granddaughter before boarding

the escalator and advised them that appellant should not be

made to ride the escalator in her condition and that there

was an alternative means of access to the second floor. He

further testified that when he later heard a commotion and

saw that appellant had fallen on the escalator, he

immediately shut it off, using the emergency button on the

first floor. Mr. Mendez stated that after the accident, the

escalator was turned back on and that it continued to work

"perfectly". Finally, he testified that he did not observe

that the speed of the escalator that day differed from its

speed on any other day before or since the accident.

 -8-

 Appellee's other witness, Mr. Grimani, manager of

the Woolworth store at the time of the accident, testified

that in his ten years of working at the store he never saw

the escalator accelerate beyond its normal operating speed

nor received a complaint regarding its speed. He stated that

in his 33 years of employment with Woolworth, he had never

heard of an escalator accelerating.

 Third party defendant, Otis Elevator Co., put on an

expert witness in electronics, Mr. Abraham. Mr. Abraham

testified that the type of motor which drives the escalator

makes acceleration impossible. He explained that the only

way that the speed of an escalator can be changed is to

replace the gear box and motor. Mr. Abraham testified that

the escalator in question ran at 90 feet per minute, the

industry standard, on the day of the accident. 

 Appellant introduced contrary evidence in support

of her theory that the accident was caused by acceleration of

the escalator and the appellee's employees' inability to

control it. Mrs. Santoni testified that when she stepped

onto the escalator and placed her hand on the handrail, she

felt a strong pull which caused her to lose her balance and

fall backward. Mrs. Monegro, another customer at appellee's

store on the day of the accident, testified that she noticed

that the escalator going from the first to the second level

was "going too fast". She further testified that when she

 -9-

learned that a lady had fallen on the escalator, she looked

for the emergency button to stop the escalator but was unable

to find it. 

 Mr. Freyre, appellant's grandson, testified that he

was at the store with his grandmother on the day of the

accident and noticed that the escalator between the first and

second level was running "very fast". He further testified

that after his grandmother's accident he tried to stop the

escalator but could not locate the emergency button. Mr.

Freyre stated that he later saw an employee remove black tape

covering the emergency button, before pushing the button to

stop the escalator. Finally, he testified that when he

returned to the store, two days later, the escalator was

running at a normal (slower) speed and that tape was no

longer covering the emergency buttons.

 Mrs. Freyre, appellant's granddaughter, testified

that she was with appellant at the time of the accident. She

stated that her grandmother was told by a Woolworth employee

that the escalator was the only means of access to the second

floor. Mrs. Freyre testified that the escalator "was going at

a high rate of speed" when appellant stepped onto it.

Finally, Mrs. Rivera, another customer at appellant's store

on the day of the accident, testified that she rode the same

escalator as appellant, shortly before appellant's accident,

and noticed that it was fast. She stated that when she saw

 -10-

appellant fall she tried to find the emergency button to stop

the escalator, but was unable to locate it. Appellant also

introduced into evidence at the trial five accident reports

of other falls on the escalators in appellant's store during

1988.

 Based upon the evidence presented (summarized

above), the jury concluded that appellee was negligent and

that its negligence proximately caused some of the injury or

damage suffered by appellant. It further found, however,

that appellant was comparatively negligent and that her

negligence was responsible for 95% of the damages. The

evidence, although conflicting, does not point so

overwhelmingly in favor of appellant that a reasonable jury

could not have arrived at this conclusion. "[I]t is for

jurors, not judges, to weigh the evidence and determine the

credibility of witnesses." Insurance Co. of North America v.
 

Musa, 785 F.2d 370, 372 (1st Cir. 1986). It was the jury's
 

right to credit appellee's witnesses and to conclude that the

escalator was not running at an excessive speed and that

appellant's own actions, for example her unsteadiness or

misplacement of her cane, caused her to fall. The jury

verdict is supported by sufficient evidence.

Jury Misconduct
 

 A district court's decision denying a motion for

new trial will not be reversed except for abuse of

 -11-

discretion. Real v. Hogan, 828 F.2d 58,61 (1st Cir. 1987).
 

The district court, following appellant's allegation of juror

misconduct, properly carried out its duty to investigate to

ascertain whether the misconduct actually occurred, and if

so, whether it was prejudicial. See United States v. Boylan,
 

898 F.2d 230, 258 (1st Cir.), cert. denied, 498 U.S. 849
 

(1990). The district court held a full evidentiary hearing

at which witnesses for appellant and appellee testified and

were cross-examined under oath.

 Upon review of the record, including the transcript

of the evidentiary hearing, we conclude that the district

court did not abuse its discretion in determining that the

alleged misconduct did not occur. At the evidentiary

hearing, appellant's principal witnesses were her son and

grandson who testified that they saw one of the jurors

converse with witnesses and counsel for the defendants in the

hallway of the courthouse on the morning of the final day of

the trial, eight hours before the verdict was rendered.

Appellee called the juror, witnesses and attorney alleged to

have engaged in the misconduct to testify. All of them

denied that the conversation had ever occurred. 

 The juror testified that he had been approached by

a woman, unconnected with the case, outside of the

courthouse, who told him that one of appellee's witnesses was

from the same home town as the juror. The juror stated,

 -12-

however, that he was not influenced by this information. Our

review of the record supports the district court's conclusion

that sufficient evidence was produced to show that the

communication did not have a prejudicial effect. There was

no abuse of discretion. See United States v. O'Brien, 972
 

F.2d 12, 14 (1st Cir. 1992).

 Moreover, by failing to inform the district court

about the alleged juror misconduct until five hours after the

verdict was rendered, although she had allegedly become aware

of the impropriety eight hours before the verdict was

entered, appellant waived the right to complain about such

conduct. See United States v. Morris, 977 F.2d 677 (1st Cir.
 

1992), cert. denied, U.S. , 113 S.Ct. 1588 (1993). 
 

Even absent waiver, however, we conclude that there was no

miscarriage of justice and therefore affirm the district

court's denial of appellant's motion for a new trial.

Jury Instructions
 

 Appellant's final argument is that the district

court erred in instructing the jury. First, appellant argues

that the court in its opinion mischaracterized the case as a

"slip and fall" case and that its misconception of the case

was reflected in the jury instructions. Second, appellant

contends that the district court erred in instructing the

jury regarding dismissal of the third-party defendant as

follows:

 -13-

 Otis Elevator Company is no longer with us. The
 case of Otis was disposed of in such a manner that
 you don't need to concern yourself with anything
 pertaining to it. Forget about it. Otis is no
 longer a part of this case and I repeat, you don't
 need to be concerned with it. 

Appellant argues that this instruction sent a message to the

jury that the malfunction of the escalator was not

responsible for the accident.

 The record indicates that appellant failed to

object to the jury instructions before the jury retired to

consider the verdict, as required by Fed. R. Civ. P. 51.

Rule 51 provides, in relevant part, as follows:

 No party may assign as error the giving of the
 failure to give an instruction unless that party
 objects thereto before the jury retires to consider
 its verdict, stating distinctly the matter objected
 to and the grounds of the objection.

"In the absence of compliance with the dictates of Rule 51,

we review for plain error." Elgabri v. Lekas, 964 F.2d 1255,
 

1259 (1st Cir. 1992). Our review of the district court's

instructions to the jury does not reveal any "miscarriage of

justice." Id. at 1259. Therefore, we find no plain error in
 

the jury instructions.

 Although the district court referred to this case

as a "slip and fall" case in its opinion, it did not do so in

its jury instructions. Moreover, such a reference would not

have constituted plain error. The detailed instructions

given corrected any misconception that the term "slip and

fall" might have conveyed. The court correctly stated

 -14-

current Puerto Rico law with respect to negligence in the

context of this case. See Mas v. United States, No. 92-1392,
 

slip op. at 7-8 (1st Cir. Jan. 28, 1993). Moreover, the jury

found that appellee was negligent. There was no plain error

here.

 Appellant fares no better with her argument

regarding the court's instructions about the dismissal of

Otis Elevator Co. Even assuming that the portion of the

instructions relating to the third party defendant, taken

alone, might have improperly directed the jury's attention

away from the role of the escalator in causing the accident,

when we consider the instructions as a whole, it is clear

that no miscarriage of justice resulted. Cf. United States v.
 

O'Brien, 972 at 16 ("so long as the charge, taken as a whole,
 

correctly conveys the concept of reasonable doubt to the

jury, no reversible error exists"). The district court

carefully instructed the jury that appellee had a duty to

"maintain the business place in such a safe condition that

one who is induced to enter the premises, would not suffer

damage." As thus described, appellant's duty clearly

extended to maintenance of the escalator. The manufacturer's

dismissal from the case did not preclude a finding that the

escalator was not maintained in "a safe condition." 

 For all of the foregoing reasons, the judgment and

the denial of appellant's motion for mistrial are affirmed.
 

 -15-

Appellee's request for damages and costs pursuant to Fed. R.

Civ. P. 38 is denied. 
 

 -16-